IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PATRICK D. CAHILL,

    Plaintiff,

vs.                              Case No. 4:07cv118-RH/WCS

CHARLES CRIST,
Governor, State of Florida,
and JAMES ZINGALE,
Executive Director,
Florida Department of Revenue,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, filed a civil rights complaint, doc. 1, and simultaneously paid the filing fee.

**Motion for a preliminary injunction**

Plaintiff filed an emergency motion for ex-parte injunction. Doc. 2. He seeks an ex-parte injunction to enjoin the Florida Department of Revenue "from taking any administrative actions or initiating any judicial actions against [Plaintiff] until the constitutional issues raised by [Plaintiff] in his complaint . . . have been addressed." Doc. 2.

"No preliminary injunction shall be issued without notice to the adverse party." FED. R. CIV. P. 65(a). Rule 65(b) of the Federal Rules of Civil Procedure permits a "temporary restraining order" without notice to the adverse party in a very limited situation: where it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition . . . ." FED. R. CIV. P. 65(b). There are no allegations of irreparable injury in this case. Furthermore, any such injunction is to be temporary, "not to exceed 10 days," and should merely preserve the status quo until a hearing may be held. *Id.*; Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)(noting that "under federal law [ex parte temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."). Plaintiff's request here is not to preserve the status quo, but to alter it. Plaintiff also does not seek an injunction on a temporary basis either; rather, he wants the injunction until resolution of this entire action. Plaintiff's motion for an ex parte injunction, doc. 2, should be denied for these reasons, and because the complaint should be dismissed.

**The complaint, doc. 1**

Plaintiff alleges that on March 15, 2007, he "received a "Final Notice of Non-Payment from the State of Florida, requiring a response in 14 days." Doc. 1, p. 2. Plaintiff states that this "complaint is [his] response." *Id.* Plaintiff has provided a history of the events that led up to this action.

Plaintiff and his wife had triplets born to their union on November 11, 1995.  Doc. 1.  Sadly, one infant died at birth and a second daughter died just eight months later.  Plaintiff and his wife were left with one surviving son, who is now eleven years old.  Plaintiff's wife filed for divorce in 1996, in Jacksonville, Florida, and Plaintiff was "awarded bi-weekly visitation" and ordered to pay child support.

More problems ensued in late 1996 when Plaintiff's ex-wife allegedly denied him visitation.  Litigation quickly escalated and Plaintiff provides a history of the various state court proceedings (in both Alabama, where Plaintiff lives, and Florida, where his ex-wife and child live) within this complaint.  *Id.*  In particular, Plaintiff claims he has been denied visitation with his son, and then when he attempted to correct this deprivation, Plaintiff was "arrested on September 3, 2003 on charges that his pleadings in the case constitute[d] threats against the judges."  Doc. 1, p. 5.  Ultimately, the State of Florida dropped twelve of the fourteen counts filed against Plaintiff and he turned down a plea bargain on the remaining two counts.  *Id.*, at 5-6.  Plaintiff then was found not guilty on February 14, 2007, following a jury trial.  *Id.*, at 6.

As is relevant to this case, Plaintiff states that the State of Florida has "continued to attack" Plaintiff through the Department of Revenue and is extorting money "by paying judges and magistrates to use their contempt powers to force payment or have [Plaintiff] jailed."  *Id.*  Plaintiff contends he "has been falsely imprisoned and has been forced to make payments to the Department of Revenue in conflict with judicial orders in order to obtain his freedom."  *Id.*  Plaintiff contends that the Department of Revenue will continue these actions and is denying him "due process and equal enforcement of the court's orders."  *Id.*

Plaintiff asserts his Fourteenth Amendment right to equal protection is violated by the "State of Florida department of Revenue's efforts to collect child support while refusing to enforce visitation . . . ." *Id.*, at 6.  Plaintiff also makes the conclusory assertion that the Department pays the "judiciary to extort monies by using contempt powers while refusing to use those same powers to enforce visitation" which he contends, is unconstitutional.  *Id.*, at 7.

Plaintiff further contends that the State of Florida does not have Eleventh Amendment immunity under 42 U.S.C. § 2000d "because the State of Florida has repeatedly discriminated against [Plaintiff] where the federal statute does not allow for discrimination."  *Id.*  Plaintiff further argues that the *Rooker-Feldman* doctrine does not apply here because his complaint is against State executive departments and not the state judiciary, and Plaintiff is not seeking to overturn or rehear state court decisions."  *Id.*  Rather, Plaintiff is attempting to have this Court enforce a state court order which will permit Plaintiff to have visitation with his son.  As relief, Plaintiff requests a permanent injunction against the Florida Department of Revenue to stop collecting child support payments until he is permitted to have visitation.  *Id.*, at 8.  Plaintiff also seeks a declaratory judgment that Florida's child support practices do not comply with federal law or constitutional guarantees.  *Id.*

Federal courts have "traditionally refrained from exercising authority over matters broadly described as 'domestic relations.'"  U.S. v. Kegel, 916 F. Supp. 1233, 1235 (M.D. Fla., 1996), *citing* Barber v. Barber,[1] 62 U.S. (21 How.) 582, 584, 16 L. Ed. 226

---

[1] In Barber, the wife (who lived in New York) filed a federal suit in Wisconsin against her husband, who lived in Wisconsin, seeking to enforce a New York state court decree concerning alimony.  62 U.S. at 584.

(1858); Simms v. Simms, 175 U.S. 162, 20 S. Ct. 58, 44 L. Ed. 115 (1898). The authority for invoking the "domestic relations" exception originally stemmed from Barber v. Barber, 21 How. 582, 16 L. Ed. 226 (1859) in which the Supreme Court stated, albeit in dicta, "that the federal courts have no jurisdiction over suits for divorce or the allowance of alimony." Ankenbrandt v. Richards, 504 U.S. 689, 112 S. Ct. 2206, 2209, 119 L. Ed. 2d 468 (1992), *explaining* Barber, 21 How. 582. The Ankenbrandt Court explained that although the Constitution itself did not exclude domestic relations cases from the federal court jurisdiction, the exception exists nonetheless as a matter of statutory construction. Ankenbrandt v. Richards, 504 U.S. 689, 112 S. Ct. 2206, 2213. The exception rests on the statutory requirements for diversity jurisdiction. *See* De la Rama v. De la Rama, 201 U.S. 303, 307, 26 S. Ct. 485, 486, 50 L. Ed. 765 (1906), *quoted in* Ankenbrandt, 112 S. Ct. at 2211 (finding that a "husband and wife cannot usually be citizens of different States, so long as the marriage relation continues (a rule which has been somewhat relaxed in recent cases), and for the further reason that a suit for divorce in itself involves no pecuniary value.").

Even though Barber "did not intend to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree," the Supreme Court has "expanded the domestic relations exception to include decrees in child custody cases." Ankenbrandt, 112 S. Ct. at 2214; In re Burrus, 136 U.S. 586, 594, 10 S. Ct. 850, 853, 34 L. Ed. 500 (1890). In Burrus, the issue was a child-custody dispute in which the father sought to have the child removed from her grandparents care and given to him. When the grandfather refused to give up the child, he was arrested and taken to jail. The

grandfather sought habeas relief and claimed he was illegally imprisoned because the father was wrongfully given custody. The Supreme Court held that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." Burrus, 136 U.S. at 593-594.

The Ankenbrandt Court reaffirmed these earlier cases by concluding:

> . . . that the domestic relations exception, as articulated by this Court since Barber, divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders.

Ankenbrandt, 112 S. Ct. at 2215.

Even prior to Ankenbrandt, courts have ruled that the federal courts lack subject matter jurisdiction in domestic relations cases. For example, in Solomon v. Solomon, 516 F.2d 1018 (1975), Pennsylvania residents executed a marital separation agreement which provided for monthly alimony payments by the husband to the wife. The wife eventually filed a complaint in a federal district court alleging diversity of citizenship and complaining that the defendant husband had defaulted on payments due under the separation agreement. The wife sought monetary damages for the husband's failure to make the monthly support payments and enforcement of the agreement. The husband admitted he had not made the payments as due under the agreement, but asserted as an affirmative defense that the wife had breached the agreement by not allowing him visitation privileges rights which he was due under the Agreement. On appeal, the Circuit Court affirmed the dismissal and concluded the district court lacked subject

matter jurisdiction over the complaint of the wife because of the long-standing judicially-carved domestic relations exception to Federal court jurisdiction.  516 F.2d at 1026.

These types of cases no longer rest on the non-diversity of the parties (although it is acknowledged in this case that there is diversity), but on the understanding that state courts have historically decided these cases and have developed expertise in the matter and an interest in overseeing future issues that may arise.  See, e.g., Stevens v. Sley, 407 F.Supp. 140, 144 (D.C. Pa. 1976).  This is a matter for the state court to decide.

Although Plaintiff now names the Governor of the State of Florida and a state agency as a Defendant, it does not save this case from the domestic relations bar.[2]  It is evident that Plaintiff's claims fit securely within the "domestic relations exception," even though Plaintiff is naming parties other than his ex-wife as the Defendant.  What Plaintiff seeks as relief is an injunctive order against the Florida Department of Revenue to stop collecting child support payments until he is permitted to have visitation.  Such an order would contravene an order from a Florida court which, apparently, established the child support award.  This Court lacks subject matter jurisdiction to modify or terminate such an order.

---

[2] It does not appear from Plaintiff's allegations that there are conflicting court orders from two different states, both of whom have asserted jurisdiction to render contrary custody determinations.  If that were the case, Plaintiff might have an avenue of redress in this Court.  See Heartfield v. Heartfield, 749 F.2d 1138 (5th Cir. 1985) (finding that "where courts of two different states assert jurisdiction over a custody determination, federal district court intervention is proper and in fact necessary to enforce compliance with § 1738A.").  In other words, the "domestic relations exception" does not apply where the complaint otherwise makes out a substantial case for federal question jurisdiction.  Flood v. Braaten, 727 F.2d 303, 307 (3d Cir. 1984).  See also McDougald v. Jenson, 786 F.2d 1465 (11th Cir. 1986).

Plaintiff is also attempting to have this Court enforce a state court order. Any such relief that is possible to Plaintiff must come through a proper request to the Florida courts. That is also a matter for the state courts to consider as this Court lacks jurisdiction to entertain such a suit.

To the degree Plaintiff contends that the Florida Department of Revenue is violating his right to equal protection, such a claim must fail. Accepting Plaintiff's allegations as true, the Department is responsible for collecting child custody payments. The Department, however, is not the proper legal authority to enforce a visitation provision from a divorce or family law matter. Neither the Governor nor the Department of Revenue are the proper Defendants for a claim that these government officials refuse to enforce Plaintiff's visitation rights because they are not the persons with authority to take such action. Plaintiff may proceed in state court to seek enforcement of a court order which provides him with visitation rights.

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion for a preliminary injunction, doc. 3, be **DENIED**, and the complaint, doc. 1, be **DISMISSED** for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on March 29, 2007.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**